UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
TRUSTEES OF THE LOCAL 7 TILE
INDUSTRY WELFARE FUND, TRUSTEES
OF THE LOCAL 7 TILE INDUSTRY
ANNUITY FUND, TRUSTEES OF THE
TILE LAYERS LOCAL UNION 52 PENSION
FUND, TRUSTEES OF THE BRICKLAYERS
& TROWEL TRADES INTERNATIONAL
PENSION FUND, AND TRUSTEES OF THE
INTERNATIONAL MASONRY INSTITUTE,

                  MEMORANDUM AND ORDER
                  18-CV-3344

                       Plaintiffs,

        - against -

KIMO TILE @ MARBLE, LIMITED
LIABILITY COMPANY d/b/a KIMO TILE
COMPANY, LLC,

                    Defendant.
--------------------------------------------------------------x

**GLASSER**, Senior United States District Judge:

      Plaintiffs the Trustees of the Local 7 Tile Industry Welfare Fund, Trustees of the Local 7

Tile Annuity Fund, Trustees of the Tile Layers Local Union 52 Pension Fund, Trustees of the

Bricklayers & Trowel Trades International Pension Fund, and International Masonry Institute

(jointly, "the Funds") brought this civil action to collect $537,872.20 of employer contributions—

plus interest, liquidated damages, audit fees, and attorneys' fees—that they allege defendant Kimo

Tile @ Marble, Limited Liability Company d/b/a Kimo Tile Company LLC ("Kimo") owes them

under a collective bargaining agreement ("the CBA").  Compl. 4–5, ECF No. 1.  The Funds bring

their claim pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security

Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, and section 301 of the Labor Management

Relations Act of 1947, 29 U.S.C. § 185.  *Id.* at 1.

Kimo has moved for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure as to (i) $63,540.41 of disputed delinquent contributions,[1] and (ii) a further $235,307.11 of alleged delinquent contributions that the Funds now acknowledge are not delinquent.  ECF No. 17.  The Funds have cross-moved (i) under Rule 15(b)(2) to conform their Complaint to the evidence that those $235,307.11 of alleged delinquent contributions are not delinquent, which would reduce the Funds' total claim for delinquent contributions to $302,565.09; and (ii) for summary judgment on this remaining $302,565.09 of contributions, plus interest, liquidated damages, audit costs, and attorneys' fees.  ECF No. 18; Pls.' Mem. Opp'n Def.'s Mot. Summ. J. and Supp. Pls.' Cross-Mot. Summ J. ("Pls.' Mem.") 1 n.1, ECF No. 25.

For the reasons stated below, Kimo's motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**, the Funds' motion to conform the Complaint to the evidence is **DENIED AS MOOT**, and the Funds' motion for summary judgment is **DENIED**.

## BACKGROUND[2]

Plaintiffs the Funds are labor-management trust funds that benefit employees of contributing employers pursuant to the CBA, which the employers agreed with the Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers ("Local 7").  *See* Decl. of William Hill, at Ex. A (CBA), ECF No. 19-1.  Defendant Kimo is a company based in Millville, New Jersey, that contracts as a tile installer on construction projects throughout the northeastern United States.  Sasha Kissoondath ("Kissoondath") is Kimo's founder, majority owner, and project manager.

---

[1]   The Funds state that Kimo's motion disputes only $60,085.72 of the alleged delinquent contributions. *See* Pls.' Mem. 2, 8.  That total omits an alleged delinquency of $3,254.69 for Eric Mullins disputed by Kimo, *see* Def.'s Mem. 6, and incorporates a $200 transcription error made by Kimo, *see infra* note 3.

[2]   Unless noted otherwise, these background facts are drawn from the undisputed portions of the parties' statements of material facts submitted pursuant to Local Rule 56.1.  *See* ECF Nos. 17-1, 23, 24, 30.

The CBA bound Kimo between March 14, 2014, and June 2, 2017.  *See* CBA, art. XXX. It required Kimo to make employer contributions to the Funds based on the hours its employees worked within Local 7's defined trade categories and territory ("Covered Work").  The parties dispute the scope of Local 7's trade coverage, described in Article III of the CBA, but agree that it included setting and installing tile.  *See* Pls.' Resp. to Def.'s Local R. 56.1 Stmt. ¶ 6, ECF No. 24; CBA, art. III.  Under Article II of the CBA, Local 7's territory comprised New Jersey, New York City, Long Island, and several counties elsewhere in New York.  If Kimo performed tile work outside Local 7's territory, it had to abide by the collective bargaining agreement of any Local 7 affiliate in effect there and make "all contributions specified [in the affiliate agreement]." CBA, art. VII, § 1.  If no collective bargaining agreement covered the place where Kimo did tile work, then "the full terms and conditions" of the Local 7 CBA would apply.  *Id.*

The CBA required Kimo to submit to periodic payroll audits.  *Id.* art. IX, §§ 3(G–K).  If an audit were to identify delinquent contributions, the CBA provided for interest, liquidated damages, audit costs, attorneys' fees, and other costs.  *Id.* § 3(L).  Following such an audit, the Funds' auditor issued a report in April 2018 for the period March 2014 to September 2017.  Decl. of Terry Vouvoudakis ("Vouvoudakis Decl."), at Ex. H ("2018 Audit"), ECF No. 20-2.  It identified $537,872.20 of employer contributions Kimo owed the Funds, interest of $136,772.54, liquidated damages of $94,474.95, and audit costs of $8,020, for a total of $777,139.69.  *Id.* at 1.  In June 2018, the Funds initiated the present action, relying on the 2018 Audit.

Subsequently, Kimo submitted evidence to the auditor rebutting certain of the 2018 Audit's conclusions.  In February 2020, the auditor issued an amended report covering the same period of March 2014 to September 2017.  Vouvoudakis Decl. Ex. K ("2020 Audit"), ECF No. 20-5.  The 2020 Audit identified only $302,565.09 in delinquent contributions ($235,307.11 less than alleged

in the 2018 Audit), interest of $157,869.34 (as of February 4, 2020), liquidated damages of $53,083.98, and audit costs of $24,900.  Thus, according to the 2020 Audit, Kimo owed the Funds $538,418.41 in total, as summarized in the following table (the highlighted figures are those amounts assessed in the 2020 Audit on which Kimo seeks summary judgment):

| SUMMARY OF 2020 AUDIT | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Delinquent Contributions Assessed | | | | | Other Assessments | | | |
| | 2014 | 2015 | 2016 | 2017 | Sub-Total | Interest | Liquidated Damages | Audit Costs | Sub-Total |
| **LOCAL 7 MEMBERS** | | | | | | | | | |
| **Payroll** | | | | | | | | | |
| Alvarez, Jose | | | 4,154.72 | | 4,154.72 | | | | |
| Bruno, Dennis | 3,665.52 | 5,450.21 | 12,469.79 | 1,750.32 | 23,335.84 | | | | |
| Caprera, Dominick | | | 1,439.76 | | 1,439.76 | | | | |
| Decoma, Charles | | | | 1,536.10 | 1,536.10 | | | | |
| Mayfield, James | | | 5,075.05 | | 5,075.05 | | | | |
| Others | | 48,691.76 | 18,090.38 | 37,383.72 | 104,165.86 | | | | |
| | | | | | **139,707.33** | 72,396.40 | 24,512.17 | 24,900.00 | **121,808.57** |
| **Extra Payments** | | | | | | | | | |
| Alvarez, Jose | | 1,202.18 | 19,836.24 | | 21,038.42 | | | | |
| Bruno, Dennis | | 2,325.96 | 1,199.36 | | 3,525.32 | | | | |
| Caprera, Dominick | | 1,183.68 | 4,272.72 | | 5,456.40 | | | | |
| Decoma, Charles Jr. | | 1,624.48 | | | 1,624.48 | | | | |
| Mayfield, James | | 1,033.76 | | | 1,033.76 | | | | |
| Others | | | 4,197.76 | | 4,197.76 | | | | |
| | | | | | **36,876.14** | 20,323.01 | 6,448.80 | - | **26,771.81** |
| **NOT LOCAL 7 MEMBERS** | | | | | | | | | |
| **Payroll** | | | | | | | | | |
| Daly, Sean | | | 2,489.90 | | 2,489.90 | | | | |
| Puia, Christopher | | | 1,422.80 | | 1,422.80 | | | | |
| Thorington, Dale | | | 1,422.80 | | 1,422.80 | | | | |
| Others | | | 299.70 | 569.12 | 868.82 | | | | |
| | | | | | **6,204.32** | 3,066.32 | 1,091.00 | - | **4,157.32** |
| **Extra Payments** | | | | | | | | | |
| Pole Barn & Garage Tilers | | | 34,498.48 | 8,216.74 | 42,715.22 | | | | |
| Randazzi, Stephen | | 1,389.78 | | | 1,389.78 | | | | |
| | | | | | **44,105.00** | 21,817.12 | 7,754.86 | - | **29,571.98** |
| **SUBCONTRACTORS** | | | | | | | | | |
| New Image Flooring | | 19,981.05 | 35,900.99 | 4,944.23 | 60,826.27 | | | | |
| P&L Custom Tile, LLC | | | 6,402.60 | 7,611.98 | 14,014.58 | | | | |
| NJB Flooring | | | | 831.45 | 831.45 | | | | |
| | | | | | **75,672.30** | 40,266.49 | 13,277.15 | - | **53,543.64** |
| **Sub-Total** | 3,665.52 | 82,882.86 | 153,173.05 | 62,843.66 | **302,565.09** | 157,869.34 | 53,083.98 | 24,900.00 | **235,853.32** |
| **GRAND TOTAL** | $ | 538,418.41 | | | | | | | |

## DISCUSSION

I.     **Legal Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "consider the record in the light most favorable to the non-movant and . . . resolve all ambiguities and draw all factual inferences in favor of the non-movant[, but only] 'if there is a "genuine" dispute as to those facts.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Contrary to the parties' arguments, no burden-shifting analysis specific to ERISA actions applies at the summary judgment stage. The relevant inquiry is, as always, whether issues of material fact remain genuinely disputed. *See Trs. of Loc. 7 Tile Indus. Welfare Fund v. Castle Stone & Tile, Inc.*, No. 17-CV-3187, 2020 WL 4481963, at *7 (E.D.N.Y. Aug. 4, 2020) ("Regardless of what Plaintiffs' trial burden may be, it is [the parties'] burden at summary judgment to demonstrate an absence of any question of material fact as to whether [Defendant] failed to make contributions to the Funds as required by the CBA."); *Lynch v. Inter-Cty. Bldg. Materials Corp.*, No. 05-CV-1801, 2013 WL 5652524, at *7 (E.D.N.Y. Oct. 15, 2013) ("While lower courts have applied [a] burden shifting analysis at trial . . . they have generally declined to do so at the summary judgment stage . . . ." (quoting *Trs. of Loc. 807 Lab.-Mgmt. Health and Pensions Funds v. River Trucking and Rigging, Inc.*, No. 03-CV-3659, 2005 WL 2290579, at *6 (E.D.N.Y. Sept. 20, 2005))).

On a motion for summary judgment, a party "may not rely on '[c]onclusory allegations, conjecture, and speculation'" to sustain a factual dispute. *Perfect Dental, PLLC v. Allstate Ins. Co.*, 538 F. Supp. 2d 543, 546 (E.D.N.Y. 2007) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)). Where multiple parties move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care . . . to draw all reasonable inferences against the

5

party whose motion is under consideration." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114

(2d Cir. 2017) (quoting *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

## II.      **$235,307.11 of Delinquent Contributions Omitted From the 2020 Audit**

The parties agree that the 2020 Audit corrected errors in the 2018 Audit.  *See* Def.'s Local

R. 56.1 Counter-Stmt. ¶ 28, ECF No. 30.  The Funds acknowledge that, due to these corrections,

they no longer claim $235,307.11 of the delinquent contributions alleged in the Complaint.  *See*

Pls.' Mem. 1 n.1.  Thus, the Court will grant Kimo's motion for summary judgment on that

$235,307.11 portion of the Funds' claim, and it will deny as moot the Funds' Rule 15(b)(2) motion.

## III.     **Amounts for Which Both Sides Seek Summary Judgment**

Kimo's motion seeks summary judgment on $63,540.41 of the alleged delinquent

contributions, which the Court addresses in Sections III.A–E, below.  In responding to the Funds'

cross-motion for summary judgment, Kimo asked the Court to grant it summary judgment, *sua*

*sponte*, on an additional $23,291.96 of contributions, which request is addressed in Section III.F.

The Funds also seek summary judgment on these same alleged delinquent contributions, having

moved for summary judgment on their entire claim.  The Court will deny summary judgment on

these alleged delinquent contributions because issues of material fact remain contested.

### A.      **$42,715.22 for Pole Barn and Garage Conversion**

Both the Funds and Kimo initially sought summary judgment as to $42,715.22[3] in

contributions related to work constructing a "pole barn" storage facility and converting a two-car

garage into an office.  Kimo has withdrawn its motion for summary judgment on this amount.

---

[3]      Due to a transcription error, Kimo lists alleged delinquencies totaling only $42,515.22.  *See* Def.'s
Mem. 6.  The actual amount in dispute is $42,715.22 because the first alleged delinquency that Kimo
lists for Kevin Hamill is not $2,645.60 as Kimo states, but $2,845.60.  *See* 2020 Audit 71.

Def.'s Mem. Further Supp. Mot. Partial Summ. J. and Opp'n Pls.' Mot. Summ. J. ("Def.'s Opp'n") 12, ECF No. 29.  Accordingly, the Court denies as moot this part of Kimo's motion.

The Court also denies the Funds' motion with respect to this amount.  Evidence adduced by Kimo—(i) Kissoondath's testimony, (ii) corroborative testimony of Emily Jimenez, Kimo's office manager, and (iii) photographs of the pole barn and garage that show no tiles—creates a genuine dispute as to the material fact of whether work on the pole barn and garage was Covered Work requiring contributions. *See id.*; Second Decl. of Sasha Kissoondath ("Second Kiss. Decl."), at Ex. 17, ECF No. 28-5; Aff. of Emily Jimenez ¶¶ 8–9, ECF No. 31.

### B.    $1,389.76 for Work by Stephen Randazzi

Both the Funds and Kimo seek summary judgment as to $1,389.76 of contributions that the Funds allege Kimo owes on a 2015 payment to Stephen Randazzi.   Kimo argues that the work underlying this payment was delivery work, not Covered Work.  Def.'s Mem. 7.  The Funds say that the payment had to be for Covered Work because, assuming it compensated Randazzi for a typical work week, the effective hourly rate was far higher than Kimo's other delivery drivers.[4] *See* Pls.' Mem. 19–20.  The Funds also point out that Kimo never identified Randazzi as a delivery driver to the auditor, and that Kimo relies solely on Kissoondath's self-interested testimony in arguing that Randazzi did delivery work.  *See id.*; Pls.' Reply 7–8.  As no party's evidence is decisive, the Court finds that the material question of fact whether Kimo paid Randazzi for delivery work or Covered Work remains genuinely disputed.  Thus, both motions for summary judgment on this amount must be denied.

---

[4]    Kimo's payroll records show a payment of $1,837.50 to Randazzi in September 2015.  *See* First Decl. of John M. Harras, at Ex. CC, ECF No. 21-3.  The auditor assessed 42 hours of unreported hours to Randazzi, *see* 2020 Audit 70, which results in an effective hourly rate of $43.75.  Kimo paid other delivery drivers $20 and $25 per hour.  *See* Vouvoudakis Decl. Exs. I and J, ECF Nos. 20-3, 20-4.

### C.    $5,335.50 for Work in Pennsylvania

Both sides seek summary judgment on $5,335.50 that Kimo paid to three individuals who purportedly worked for Kimo in Pennsylvania, outside Local 7's territory: (i) Sean Daly, who received $2,489.90 for work done between June 7 and December 4, 2016; and (ii) Christopher Puia and Dale Thorington, who each received $1,422.80 for work done in December 2016.  *See* Def.'s Mem. 7; 2020 Audit 65–66.  The parties present competing evidence in support of their respective positions that does not resolve all material questions of fact.  Accordingly, summary judgment will be denied as to the alleged delinquent contributions for Daly, Puia, and Thorington.

#### 1.    Kimo's Evidence

As to Daly's payments, Kimo points to three of his unsigned timesheets to argue that he worked in Pennsylvania, outside of Local 7's territory.  But the timesheets' "Location" columns are blank and the "Job Site" columns list only the undefined terms "Hudson" and "HCABA."  *See* First Decl. of John Harras, at Ex. EE, ECF No. 21-5.  Moreover, even if Daly did work in Pennsylvania, the CBA still required Kimo to remit contributions, either to the Funds or to the funds of a Local 7 affiliate union whose territory includes Pennsylvania.  *See* CBA, art. VII, § 1.  The only evidence adduced by Kimo that it contributed to a Local 7 affiliate is Kissoondath's conclusory testimony.  *See* First Decl. of Sasha Kissoondath ¶ 17, ECF No. 17-2.  This evidence does not resolve the material factual questions of where Daly worked, which funds were due contributions, and whether Kimo made any contributions.  Summary judgment is, therefore, not permitted based on that evidence.

As to Puia and Thorington, Kimo's evidence shows only that it remitted contributions to the funds of Local 1, a Local 7 affiliate union, for their work in Pennsylvania between September and November 2016.  *See* Def.'s Opp'n 7–8; Second Kiss. Decl. Ex. 13, ECF No. 28-1.  However, Kimo seeks summary judgment as to contributions for hours they worked in *December* 2016.

8

Thus, Kimo's evidence leaves unresolved the material question of fact whether Kimo remitted contributions for Puia and Thorington's work in that month, foreclosing summary judgment.

### 2.     The Funds' Evidence

The evidence on which the Funds rely—the 2020 Audit—is explicitly based on assumptions and makes conclusions that are only suggested by the evidence.  In particular, the auditor assumed that all employees listed on Kimo's payroll performed only Covered Work, unless Kimo supplied contrary evidence.  *See* First Decl. of John M. Harras ("First Harras Decl."), at Ex. R (Dep. Tr. Terry Vouvoudakis), at 50–51, 132–34, ECF No. 21-17.  The Funds also posit that Puia and Thorington's work was Covered Work based on their prior work history and Kimo's failure to provide contrary evidence.  *See* Pls.' Reply 9.  The Funds' submission that "on balance, the evidence favors the Funds such that no genuine dispute exists," Pls.' Mem. 21, does not meet the summary judgment standard.  A favorable balance of evidence is insufficient for summary judgment; undisputed facts that permit no reasonable alternative are required.  *See Morin v. Spectrum Contracting Grp., Inc.*, No. 08-CV-3567, 2011 WL 1323005, at *3 (E.D.N.Y. Jan. 13, 2011) ("[I]nquiries into the reasonableness of the Funds' audit or the adequacy of defendants' employee records are properly left for trial." (quoting *Mingoia v. Santa Fe Drywall Corp.*, No. 04-CV-1712, 2005 WL 1384013, at *6 (S.D.N.Y. June 9, 2005)), *report and recommendation adopted*, No. 08-CV-3567, 2011 WL 1253232 (E.D.N.Y. Mar. 28, 2011).  As the assumptions on which the 2020 Audit and the Funds' argument are based leave material questions of fact unresolved as to contributions for Daly, Puia, and Thorington, summary judgment is impossible.

### D.     $11,441.69 for Work by Dennis Bruno

Both sides seek summary judgment with respect to $11,441.69 of delinquent contributions that the Funds allege Kimo owes for hours worked by Dennis Bruno in 2014 and 2015.

1.      **Bruno's 2014 Work**

According to Kimo, Dennis Bruno performed 274 hours of Covered Work in 2014, for which Kimo remitted contributions to the Funds for 202 hours and to Local 1's funds for the other 72 hours.  Def.'s Mem. 7–8.  The Funds agree that Kimo remitted contributions for 274 of Bruno's hours, but they say he worked 378 hours.  Pls.' Mem. 21.  For the additional 104 hours, the Funds claim that Kimo owes them $3,665.52 in further contributions.  *See* 2020 Audit 4, 13.

The Funds point to three pieces of supporting evidence, none of which resolves all material questions of fact.  First, the 2020 Audit, which found that Kimo's 2014 payroll recorded 378 hours worked by Bruno.  *See* Pls.' Reply 10; 2020 Audit 4, 13; Vouvoudakis Decl. Ex. L, at 19, ECF No. 20-6.  As the Court has explained, the 2020 Audit is subject to challenges that may not be resolved on a motion for summary judgment.

Second, the Funds point to Bruno's unsigned timesheets from July, August, and October 2014, which recorded 378 hours.  *See* Pls.' Reply 9–10 (citing First Harras Decl. Ex. HH, ECF No. 21-8).  Kimo misrepresents these timesheets when arguing that they record duplicate hours,[5] but the timesheets are indeed ambiguous.  For the two weeks between July 28 and August 10, 2014, multiple timesheets list hours worked on the same job sites, leaving it unclear whether hours are duplicated.  *See* First Harras Decl. Ex. HH 3–9, 15.  One timesheet includes no date.  *Id.* at 14.  Another timesheet omits a job site.  *Id.* at 10.  Where multiple job sites are listed, it is unclear in which union's territory some work was done.

---

[5]    Kimo misrepresents the 2014 timesheets by suggesting that (i) they list 370 total hours, when they list 378; (ii) page 3 lists 24 hours worked at the "Princeton" job site alone, when these hours are actually spread across two job sites; (iii) page 3 lists 8 hours at the "HPE" job site, when it actually lists none; (iv) page 4 lists 24 hours at the "Princeton" job site, when it actually lists none; (v) page 6 lists 16 hours in Southern New Jersey, when it actually lists 8 hours; and (vi) pages 6 and 7 list the same 16 hours of work, when they actually list different job sites ("Airport" and "L'Occtaine").  *See* Def.'s Opp'n 8.

Third, the Funds cite a 2014 W-2 that Kimo issued to Bruno listing income of $4,952.20, which the Funds say reflects payments for hours of Covered Work beyond the 274 hours that Kimo concedes.  Pls.' Mem. 21.  However, the W-2 is ambiguous.  It is unclear whether it records payments that Kimo admits making to Bruno in 2014 or additional payments.  Thus, the Funds' evidence raises material questions of fact that remain unresolved, precluding summary judgment.

### 2.    Bruno's 2015 Work

Kimo says that Bruno worked 290.5 hours in 2015, for which it remitted 473 hours' worth of contributions to the Funds (including affiliate funds).  *See* Def.'s Mem.  8–9.  The Funds say Bruno worked 520.5 hours, but Kimo remitted only 351.5 hours' worth of contributions.  *See* Pls.' Mem. 22.  The current record does not resolve these material questions of fact.

As to the work-hours discrepancy, Kimo alleges that a payroll error inflated Bruno's hours by 230 hours to 520.5, and that it corrected this error in December 2015.  Def.'s Mem. 8.  In support, Kimo points to a 2015 payroll report, a December 2015 payroll correction entry, and Bruno's 2015 W-2.  *See id.*  However, even if this correction occurred as Kimo describes, it remains unclear whether Bruno's compensation in 2015 included a bonus payment, which would not count as Covered Work.  Kimo denies paying Bruno a bonus.  *See* Def.'s Opp'n 10.  But if all $16,802.17 of Kimo's 2015 payments to Bruno reported in the W-2 are assumed to be regular pay for 290.5 hours' work, his effective hourly rate would be $57.84, which is inexplicably higher than the hourly rates of $45.74 and $45.47 recorded for Bruno in the payroll report and payroll-correction entry.  The Funds' 2020 Audit does not clarify matters because it ignores the 2015 correction.  *See* Pls.' Mem. 22.  Thus, material questions of fact remain disputed, preventing the Court from granting summary judgment as to Bruno's 2015 contributions.

### E.    $2,658.24 for Work by Charles Decoma and James Mayfield

Both sides seek summary judgment with respect to $2,658.24 of delinquent contributions that the Funds allege Kimo owes for hours worked by Charles Decoma and James Mayfield.  The Funds argue that, in September 2015, Kimo paid Decoma $2,400 for 40 hours of Covered Work and paid Mayfield $1,540 for 28 hours of Covered Work, without remitting corresponding contributions to the Funds.  *See* Pls.' Mem. 23–24.  Kimo notes that a payroll summary report labels these payments as bonuses, not Covered Work, and that the Funds' err arithmetically when arguing that these two payments imply a wage usually paid for Covered Work rather than delivery work.[6]  Def.'s Opp'n 10–11.  The Funds retort that Kimo has adduced no evidence that it paid bonuses and the "record is replete with examples of [Kimo] altering records to evade its obligations," so "[o]n balance" the Funds' position is indisputable.  Pls.' Reply 12–13.

The Court will not grant summary judgment to either side on these disputed payments.  The payroll records on which Kimo relies are not clearly reliable because, for example, they also list bonus payments to Dennis Bruno that Kimo denies making.  Equally, the Funds' suggestion that these payments mirrored amounts ordinarily paid for Covered Work is arithmetically unsound and, as noted above, the mere balance of evidence does not compel summary judgment.  Thus, material issues of fact remain genuinely disputed, which precludes summary judgment.

### F.    Payments to New Image Flooring

The Funds seek summary judgment as to delinquent contributions on payments Kimo made to New Image Flooring ("NIF") that, the Funds claim, were compensation for Covered Work both within Local 7 territory and outside it.  *See* Pls.' Mem. 13–15.  In response, Kimo asks the Court

---

[6]    The Funds err arithmetically by suggesting that 40 hours and 28 hours, when multiplied by $54.31 per hour equal, respectively, $2,400 and $1,540.  In fact, they equal $2,172.40 and $1,520.68.

to "*sua sponte*, grant Kimo summary judgment" on the allegedly delinquent contributions that are, Kimo says, related to work NIF performed outside Local 7's territory.  Def.'s Opp'n 18.

The Funds' motion for summary judgment on these payments must be denied for two reasons.  First, the Funds' briefs do not state the amount of alleged delinquent contributions tied to Kimo's NIF payments.  The 2020 Audit suggests that it is $60,826.27.  *See* 2020 Audit 75–79.  But a composite figure listed in the Funds' reply brief suggests a larger amount.  *See* Pls.' Reply 15.  Without a clear statement of the amount claimed, summary judgment is not appropriate.  Second, whatever the amount, the Funds' evidence does not establish a foundation for the entirety of their claim.  Rather, the Funds ask the Court to extrapolate from a smattering of evidence about some of Kimo's NIF payments (certain invoices, related email exchanges, and disputed testimony) to draw a conclusion about all such payments.  The Court may not do this.

As to Kimo's request, a court may grant summary judgment *sua sponte* "[a]fter giving notice and a reasonable time [for other parties] to respond . . . ."  Fed. R. Civ. P. 56(f).  However, the Court cannot do so here.  Kimo says $23,291.96 of purportedly delinquent contributions related to work performed outside Local 7's territory, but the record does not conclusively show the locations of the disputed work sites or whether affiliate collective bargaining agreements covered those locations.  Thus, it is unclear to whom contributions were owed, if at all.  Accordingly, summary judgment is not possible here as multiple issues of material fact remain unresolved.

IV.     **Amounts for which The Funds Alone Seek Summary Judgment**

The Funds seek summary judgment on their entire revised claim of $538,418.41, which comprises $302,565.09 of delinquent contributions, plus interest, liquidated damages, and audit costs.  *See* Pls.' Mem. 2, 8.  Of the delinquent-contributions portion of the Funds' claim, the Court has already addressed those amounts for which Kimo also seeks summary judgment.  The remainder comprises (i) $26,494.82 of alleged delinquent contributions for Kimo's payments to

Dominick Caprera and Jose Alvarez, and (ii) the remaining balance of the Funds' delinquent-contributions claim.

### A.      Dominick Caprera and Jose Alvarez

The Funds allege that Kimo switched from paying NIF via invoice to paying Caprera, who operated NIF, personally via payroll after he joined Local 7.  The Funds argue that these payroll payments included lump sums for Covered Work, though Kimo's payroll records list zero related work hours and Kimo failed to remit related contributions.  Pls.' Mem. 18; Pls.' Reply 13, 15.  The Funds also allege that Kimo made and improperly reported similar lump-sum payments to Alvarez for Covered Work, for which it failed to remit required contributions.  Pls.' Mem. 18; Pls.' Reply 13, 15.  Together, the 2020 Audit assesses $26,494.82 of delinquent contributions to Kimo for its payments to Caprera and Alvarez.  *See* 2020 Audit 41–44, 47.

The Funds' evidence does not resolve all outstanding questions of material fact.  In addition to the 2020 Audit, the Funds rely on two pieces of evidence.  First, a payroll record showing payments to Caprera and Alvarez in February 2016 listed as "Regular" pay for zero hours of work. *See* First Harras Decl. Ex. DD, ECF No. 21-4.  This payroll record is inconclusive because it does not cover all zero-hours payments to Caprera and Alvarez for which Kimo purportedly owes delinquent contributions.  Second, Caprera's deposition testimony, in which he says that he and Alvarez only ever performed tile work for Kimo and that he was only ever paid by Kimo for hours he actually worked.  *See* First Harras Decl. Ex. S, ECF No. 21-18.  Caprera's testimony is also inconclusive.  While he initially testified that Kimo paid him only for hours of tile work that he actually performed, Caprera later could not recall whether he was also paid for commuting to certain job sites, paid for working in Kimo's office, or received multiple payments from Kimo for the same pay period.  *Id.* at 78–80.  Accordingly, the Court denies the Funds' summary judgment motion as to Kimo's extra payments to Caprera and Alvarez.

14

## B.      The Balance of Allegedly Delinquent Contributions

The balance of the Funds' delinquent-contributions claim relies exclusively on the 2020 Audit.  As the Court has explained, the data and assumptions on which the 2020 Audit was based, and the conclusions it reaches, are not beyond dispute.  Thus, the 2020 Audit is an insufficient basis on which to resolve all questions of material fact and grant summary judgment.  Accordingly, the Court will deny the Funds' motion as to the balance of their delinquent-contributions claim.

## <u>CONCLUSION</u>

Upon reading this opinion in its final draft, I am led to think of the countless motions for summary judgment which I, and surely every other judge, have been required to decide and how oblivious or disdainful of Rule 11(b) are the filers of those motions.  *See* Fed. R. Civ. P. 11(b)(2) ("By presenting to the court a . . . written motion . . . an attorney . . . certifies that . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .").  As is blindingly evident in this instance, the pleadings virtually shriek material issues of fact, which make motions for summary judgment unwarranted.  Parties genuinely desirous of resolving their issues, acting in good faith, could do so amicably and, failing that, embark upon the expensive, tortuous process of preparing for and proceeding to trial.

Being much too late for a prompt resolution or resort to trial here, Kimo's motion for partial summary judgment is **GRANTED** as to $235,307.11 of alleged delinquent contributions that were included in the 2018 Audit but omitted from the 2020 Audit, and it is **DENIED** with respect to the alleged delinquent contributions of:

1.  $42,715.22 related to the pole barn construction and garage conversion;

2.  $1,389.76 for a payment to Stephen Randazzi in September 2015;

3.  $5,335.50 for 2016 payments to Sean Daly, Christopher Puia, and Dale Thorington;

4. $11,441.69 for payments to Dennis Bruno in 2014 and 2015;

5. $2,658.24 for September 2015 payments to Charles Decoma and James Mayfield; and

6. an indeterminate amount for payments to New Image Flooring over multiple years.

The Funds' motion for summary judgment on their entire claim is **DENIED**, and the Funds' motion to conform the Complaint to the evidence is **DENIED AS MOOT**.

SO ORDERED.

Dated: Brooklyn, New York
July 7, 2022

_____/s/_____
I. Leo Glasser
Senior United States District Judge

16